## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.                                             CRIMINAL NO. 00-333 (SCC)(HRV)

[15] HERNAN VAZQUEZ-MENDEZ,

Defendant.

### MAGISTRATE JUDGE'S AMENDED[1] REPORT AND RECOMMENDATION

### I.      INTRODUCTION

Pending before the Court is the motion filed by *pro se* defendant Hernan Vazquez-Mendez (hereinafter "Mr. Vazquez-Mendez") seeking a reduction of his sentence pursuant to the compassionate release statute—18 U.S.C. § 3582(c)(1)(A)(i) and the First Step Act of 2018 ("FSA"). (Docket No. 1420). The government has opposed the motion (Docket No. 1430) and subsequently filed an addendum to its response in opposition. (Docket No. 1433). This matter was referred to me for report and recommendation. (Docket No. 1423).

For the reasons set forth below, I recommend that the motion for sentence reduction be DENIED.

---

[1] The Report and Recommendation filed at Docket No. 1442 should be deem withdrawn.

1

## II. PROCEDURAL HISTORY AND BACKGROUND

For his role as an enforcer in a drug-trafficking organization, Mr. Vazquez-Mendez was charged in a one-count indictment along with 18 other co-defendants. (Docket No. 2). The indictment charged a conspiracy to possess with intent to distribute controlled substances, to wit, heroin, cocaine, and cocaine base, all in violation of 21 U.S.C. §§ 841(a) and 846. The alleged conspiracy spanned from 1992 until the return of the indictment in the year 2000. (*Id.*) The setting of the offense was the Tibes housing project in Ponce, Puerto Rico. (*Id.*)

Mr. Vazquez-Mendez exercised his right to a trial and was convicted by a jury. (Docket No. 501). He was originally sentenced on December 17, 2001, to life imprisonment. (Docket Nos. 535, 536). The life sentence was driven by the application of the murder cross-reference found at U.S.S.G. §§ 2D1.1(d)(1) and 2A1.1. He appealed. (Docket No. 540). On April 11, 2005, the First Circuit vacated defendant's sentence and remanded the case for re-sentencing in light of *United States v. Booker*, 543 U.S. 220 (2005). *See United States v. Irizarry*, 404 F.3d 497, 504 (1st Cir. 2005).

On re-sentencing, the defendant once again received a sentence of life imprisonment. (Docket Nos. 871, 872). The sentencing judge again applied the murder cross-reference after finding that Mr. Vazquez-Mendez participated in three murders that were committed in furtherance of the conspiracy. (*See* Transcript of Re-sentencing Hearing, Docket No. 898 at 13). Under said guideline sections, the total offense level determined was 43. U.S.S.G. § 2A1.1. Since there was no adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1, the sentencing range was life. The First Circuit affirmed the sentence imposed as reasonable. (*See* Docket No. 958; *United States v.*

2

*Vazquez-Mendez*, Appeal No. 06-1018 (1st Cir. July 18, 2007)). Post-conviction relief under 28 U.S.C. § 2255 was denied. (Docket No. 1039).

On March 20, 2024, Mr. Vazquez-Mendez filed the motion for sentence reduction currently pending before the court. (Docket No. 1420). The government opposed on June 27, 2024. (Docket No. 1430). The United States subsequently supplemented its response in opposition. (Docket No. 1433). This matter was referred to me for report and recommendation on April 18, 2024. (Docket No. 1423).

### III.    APPLICABLE LAW AND DISCUSSION[2]

Mr. Vazquez-Mendez asserts that his motion for compassionate release should be granted because he has demonstrated "that he's not a danger to the community, is fully rehabilitated and present[s] extraordinary and compelling reasons for a sentence reduction." (Docket No. 1420 at 1). Although Mr. Vazquez-Mendez outlines several grounds for his compassionate release request, he makes no effort at developing his arguments. The arguments are unintelligible at times or lacking in analysis. Notwithstanding, I will liberally construe them. *Ayala-Serrano v. Gonzalez*, 909 F.2d 8, 15 (1st Cir. 1990)(noting "that p*ro se* pleadings are to be liberally construed.").

---

[2] At Docket No. 1420-1, Mr. Vazquez-Mendez included an attachment that appears to be a request to the warden of his institution that a compassionate release motion be filed on his behalf. There is no further information in the record other than this attachment as to the issue of exhaustion of administrative remedies. Therefore, I have no way of determining if remedies were properly exhausted, which is one of the requirements of 18 U.S.C. § 3182(1)(A). However, in its response in opposition, the government did not raise the issue of exhaustion, choosing instead to argue the merits of the compassionate release motion. (Docket Nos. 1430, 1433). I thus find that the government has waived any argument that defendant failed to exhaust remedies. *See United States v. Texeira-Nieves*, 23 F.4th 48, 53 (1st Cir. 2022)("In our judgment . . . [the] exhaustion requirement is not a jurisdictional limitation . . . ."). As such, the government can waive it "either expressly or by failing to raise it as a defense." *United States v. Newton*, No. 17-cr-0073-JAW, 2023 WL 8529442; 2023 U.S. Dist. LEXIS 218588 (D. Me. Dec. 8, 2023)(citations omitted).

First, he cites *United States v. Jackson*, 36 F.4th 1294 (11th Cir. 2022), a decision that was subsequently vacated (*see* 55 F.4th 846) and that involved the question of whether a prior state conviction for possession and distribution of cocaine qualified as a serious drug offense under the Armed Career Criminal Act ("ACCA") following the federal government's legalization of a cocaine derivative called ioflupane.  Second, he mentions that the Fair Sentencing Act was made retroactive by the FSA but does not explain how it applies to him.  Third, defendant contends that the jury in his case never made a determination as to drug quantity.  According to Mr. Vazquez-Mendez, this constitutes a violation of the rule announced in *Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 314 (2013).

In further support for his request for a reduced sentence, Mr. Vazquez-Mendez discusses his personal characteristics and asserts that release is warranted under the section 3553(a) factors.  He states that he joined the conspiracy as a juvenile, which made him vulnerable to manipulations.  He also says that he had employment prior to his incarceration and has maintained employment while incarcerated.  Mr. Vazquez-Mendez alerts the Court that he has successfully completed multiple programs and that, upon release, he will have the support of friends and family.  He has served more than 23 years in prison and is currently 47 years old.  Mr. Vazquez-Mendez claims to have a low risk of recidivism.

The United States responds by arguing that Mr. Vazquez-Mendez has failed to show the existence of extraordinary and compelling reasons.  However, the government's submission is not helpful as it addresses the risks associated with the COVID-19

4

pandemic, an argument that the defendant does not make.[3] On the other hand, in the addendum to its response, the government includes a discussion and evidence regarding Mr. Vazquez-Mendez' disciplinary record. (Docket No. 1433). That discussion allows me to assess whether defendant is a danger to others in the community and to properly weigh the section 3553(a) factors.

Despite unhelpful briefing by the parties, I find that the information in the record allows me to decide whether compassionate release is warranted. For the following reasons, I find that it is not. Similarly, relief should be denied as to section 404 of the FSA.

**A. Legal Framework**

The so-called compassionate release statute allows a court acting on a defendant-filed motion "after the defendant has fully exhausted all administrative rights to appeal", . . . to

> reduce the term of imprisonment (and... impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>
> and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

---

[3] For example, the government states in its response: "In his motion, Defendant claims to be at high risk for complication if he contracts COVID-19 without providing any basis or medical support for this conclusion." (Docket No. 1430 at 8). Immediately after, the government continues its argument by referring to a "Mr. Morales-De Jesus." (*Id.*).

5

18 U.S.C. § 3582(c)(1)(A)(i). This statute is one of the very few exceptions to the rule that once imposed, a term of imprisonment shall not be modified. *United States v. Saccoccia*, 10 F.4th 1, 3 (1st Cir. 2021).

      Thus, to grant a compassionate release motion, the court must find that a defendant has established three things: (1) that extraordinary and compelling reasons warrant a sentence reduction; (2) that the reduction is consistent with the applicable policy statements issued by the Sentencing Commission; and (3) that relief is appropriate under the circumstances of the case after considering the applicable 18 U.S.C. § 3553(a) factors. *United States v. D'Angelo*, ___ 4th ___, No. 22-1875, 2024 U.S. App. LEXIS 18794, at *10-11 (1st Cir. July 30, 2024); *see also United States v. Quiros-Morales*, 83 F.4th 79, 84 (1st Cir. 2023). With respect to the first prong—whether the reasons advanced by the defendant are extraordinary and compelling—the determination is "guided by the plain meaning of those terms." *United States v. Canales-Ramos*, 19 F.4th 561, 566 (1st Cir. 2021). "The plain meaning of 'extraordinary' suggests that a qualifying reason must be a reason that is beyond the mine-run either in fact or in degree . . . By the same token, the plain meaning of 'compelling' suggests that a qualifying reason must be a reason that is both powerful and convincing." *Id*. (citations omitted).

      Prior to November 1, 2023, and because the Sentencing Commission had not issued an amended policy statement applicable to prisoner-initiated compassionate release motions, the First Circuit held that district courts had discretion to "consider any complex of circumstances raised by a defendant, as forming an extraordinary and compelling reason warranting relief." *United States v. Ruvalcaba*, 26 F.4th 14, 28 (1st Cir. 2022). Subsequently, in *United States v. Trenkler*, 47 F.4th 42, 47-48 (1st Cir. 2022),

6

it was clarified that pursuant to the holding in *Ruvalcaba*, district courts "may conduct a holistic review to determine whether the individualized circumstances [of the defendant], taken in the aggregate, present an 'extraordinary and compelling' reason to grant compassionate release," including alleged sentencing errors.

The Sentencing Commission's policy statement regarding defendant-filed motions for compassionate release is now in effect. *See* U.S.S.G. § 1B1.13 (Nov. 1, 2023). Consequently, I "must take heed of" the policy statement as noted in *United States v. Rivera-Rodriguez*, 75 F.4th 1, 18 n.22 (1st Cir. 2023), and consider its scope in deciding what constitutes an extraordinary and compelling reason. *United States v. Quiros-Morales*, 83 F.4th at 84.

In the policy statement, the Sentencing Commission has identified six circumstances that individually or in combination may provide extraordinary and compelling reasons for a reduction in sentence. U.S.S.G. § 1B1.13(b). These are: certain medical circumstances such as a terminal illness or inability to receive medical care while incarcerated, *id.*, § 1B1.13(b)(1); the defendant's age, *id.* § 1B1.13(b)(2); the defendant's family circumstances, *id.* § 1B1.13(b)(3); the defendant having been the victim of sexual or physical abuse by or at the direction of a correctional officer, *id.* § 1B1.13(b)(4); a catch-all provision of any other reason or combination of reasons similar in gravity to those described in (1) through (4), *id.* § 1B.13(b)(5); and if the defendant received an unusually long sentence, *id.* § 1B1.13(b)(6).

**B. Analysis**

Mr. Vazquez-Mendez has failed to establish that a reduction of his sentence is warranted. None of the reasons asserted by him rise to the level of extraordinary and

7

compelling, individually or in combination. They are also not consistent with the policy statements of the Sentencing Commission nor consonant with the § 3553(a) factors.

For instance, the *Jackson* decision from the Eleventh Circuit, upon which Vazquez-Mendez relies, is of no help to him in the compassionate release context. For starters, the holding of the case is not applicable to Mr. Vazquez-Mendez at all. In that case, the Eleventh Circuit held that in determining whether a prior state drug conviction qualifies as a "serious drug offense" under the ACCA, due process requires courts "to use the iteration of the Controlled Substances Act Schedules incorporated into [18 U.S.C.] § 924(e)(2)(A)(ii)'s definition of 'serious drug offense' in effect when [the defendant] possessed the firearm that undergirds the federal conviction pending before the court." *Jackson*, 36 F.4th at 1300. Relevantly, the United States Attorney General removed ioflupane (a cocaine derivative) from the list of federally controlled substances on September 11, 2015, but cocaine-related convictions under Florida Statutes Section 893.13(1)(a) encompassed ioflupane until July 1, 2017. *Id*. at 1303. For defendants who committed the § 922(g)(1) offense on or after September 11, 2015, the Court in *Jackson* held that a pre-July 2017 cocaine-related conviction under the relevant Florida statute did not qualify as a serious drug offense. *See id*. at 1301-04.

Subsequently, however, the Eleventh Circuit *sua sponte* vacated the panel's opinion, and after receiving supplemental briefing to address the impact of *McNeill v. United States*, 563 U.S. 816 (2011), the court reached the opposite conclusion. *United States v. Jackson*, 55 F.3d 846 (11th Cir. 2022), *affirmed by Brown v. United States*, ___ U.S. ___, 144 S. Ct. 1195, 218 L. Ed. 2d 583 (May 23, 2024).

Here, the defendant was not sentenced under the ACCA, nor is there evidence that he has a prior cocaine conviction. Second, the opinion that held that a Florida cocaine conviction did not qualify as a serious drug offense was vacated *sua sponte* by the Eleventh Circuit. On this ground, the defendant cannot possibly meet his burden to show extraordinary and compelling reasons.

Next, Mr. Vazquez-Mendez makes a claim that his sentence should be reduced under section 404 the FSA. However, it is not clear that he is eligible for relief under the FSA. Even if he is, the section 3553(a) factors counsel against granting relief in this case. I explain.

The Fair Sentencing Act of 2010, Pub. L. No. 111-220, raised the threshold quantities of cocaine base thus altering the mandatory minimum sentences in 21 U.S.C. § 841(b)(1). These changes, however, were not applicable to convictions or sentences imposed before August 3, 2010. *See Dorsey v. United States*, 567 U.S. 260, 132 S. Ct. 2321, 183 L. Ed 250 (2012). Congress sought to change that with the enactment of the FSA. *See United States v. Smith*, 954 F.3d 446, 447-48 (1st Cir. 2020)(noting that the FSA "offers certain persons convicted under § 841 prior to enactment of the Fair Sentencing Act a chance to seek a retroactively reduced sentence.")

Specifically, section 404(b) of the FSA provides in pertinent part that "[a] court that imposed a sentence for a covered offense may, on motion of the defendant . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." First Step Act of 2018, Pub. L. 115-391, § 404(b), 132 Stat. 5194, 5222 (2018). A covered offense is defined as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or

3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010." *Id.* §404(a). Even if a defendant is eligible for relief, the FSA "gives district courts discretion to grant or deny a sentencing reduction." *Smith*, 954 F.3d at 452 (*quoting* § 404(c): "Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."). In the exercise of said discretion, district courts "may consider other intervening changes of law (such as changes to the Sentencing Guidelines) or changes of fact (such as behavior in prison) in adjudicating a[n] FSA motion. *Concepcion v. United States*, 597 U.S. 481, 488, 142 S. Ct. 2389, 213 L. Ed. 2d 730 (2022).

A review of the record in this case shows that while the indictment alleged a conspiracy to distribute controlled substances including cocaine base, at trial, the jury found Mr. Vazquez-Mendez responsible for only powder cocaine and heroin. (Docket No. 501). The jury was given a special verdict form for each defendant, which stated:

> Do you unanimously agree by proof beyond a reasonable doubt that the quantity of **cocaine** which was distributed and/or intended to be distributed as part of the conspiracy was five kilograms or more?
>
> Do you unanimously agree by proof beyond a reasonable doubt that the quantity of **heroin** which was distributed and/or intended to be distributed as part of the conspiracy was one kilogram or more?

(*Id.*)(emphasis added); *see also United States v. Irizarry*, 404 F.3d at 504.[4] The jury answered both questions in the affirmative. *Id.*

---

[4] It is not clear why the jury was not asked to determine the quantities for cocaine base.

Because cocaine base was not attributed to him by the finder of fact, the defendant was not sentenced for a covered offense. *See United States v. Gravatt*, 953 F.3d 258, 263 (4th Cir. 2020)("[A]n offense for possession with intent to distribute powder cocaine is plainly not a covered offense under the [First Step] Act."); *see also United States v. Rivera*, 824 Fed. Appx. 598, 600 (11th Cir. 2020)(convictions concerning heroin are not covered offenses). On the other hand, the jury returned a general verdict of guilty regarding count one of the indictment, which charged conspiracy to possess with intent to distribute controlled substances including cocaine base. Therefore, an argument could be made that the defendant's conviction is for a covered offense. *Cf. United States v. Bennett*, 855 Fed. Appx. 133, 134 (holding that the defendant was not convicted for a covered offense where the jury found Bennet guilty of conspiracy to distribute both cocaine and crack cocaine, but it more specifically found that the conspiracy involved only five (5) kilograms of powder cocaine). Accordingly, I will assume that the defendant is eligible for relief under section 404 of the FSA.

In any event, as stated above, that a defendant is eligible for relief is not the end of the inquiry. Courts have discretion to deny a motion for reduction of sentence under the FSA to otherwise eligible defendants. *Concepcion v. United States*, 597 U.S. at 496 (noting that "§404(c) only underscores that a district court is not required to modify a sentence for any reason."). In deciding whether to exercise its discretion to modify a sentence under the FSA, the court must consider nonfrivolous arguments presented by the parties but need not necessarily be persuaded by them. *Id.* at 502. The Supreme Court in *Concepcion* stated that the FSA did not controvert the "well-established sentencing practice" of weighing the section 3553(a) factors in considering a reduction

11

in sentence. *United States v. Rosario-Rivas*, Criminal No. 03-294 (GMM), 2024 WL 3488639, 2024 U.S. Dist. LEXIS 129729, at *7 (D.P.R. July 9, 2024)(*quoting Concepcion*, 597 U.S. at 495). Under the circumstances of this case, the Court should in its discretion decline to reduce defendant's sentence.

The seriousness of the offense, the need to provide just punishment, the need to protect the public, and the need to promote deterrence and respect for the law, weigh heavily against a reduction of sentence. *See United States v. Martinez*, No. 2:18-cr-00089-JAW, 2023 WL 3305674, 2023 U.S. Dist. LEXIS 79444 at *29 (D. Me. May 8, 2023). Mr. Vazquez-Mendez was not just any member of the drug conspiracy; he was an enforcer who brandished and used firearms. He also participated in a triple murder. And although he claims that he has maintained "clear conduct", the record shows otherwise. He has been sanctioned numerous times for violations to the internal rules of the Bureau of Prisons, including for assaults, fighting, possession of dangerous weapons (as recent as December of 2023), possession and use of narcotics, and refusing to work, among others. (Docket No. 1433-5). Therefore, the relevant sentencing factors do not support a reduction in sentence be it under section 404 of the FSA or the compassionate release statute.

Mr. Vazquez-Mendez's *Alleyne* argument is equally unavailing. First, the rule announced in *Alleyne* is not retroactively applicable to defendants convicted before June 17, 2013. *See Butterworth v. United States*, 775 F.3d 459, 461 (1st Cir. 2015). Second, as an intervening change in the law, the claim is not, standing alone, sufficient to qualify as

an extraordinary and compelling reason unless made in the context of sections U.S.S.G. § 1B1.13(b)(6)(unusually long sentence) and § 1B1.13(c)(intervening changes).[5]

Mr. Vazquez-Mendez has not specifically argued that his life sentence resulting from the application of the murder cross-reference is unusually long under the policy statement, although that argument could be inferred. The argument would in any event fail because the alleged intervening change in the law, *Alleyne*, does not alter the applicable statutory maximum sentence as per the jury's drug-quantity finding. *See United States v. Pizarro*, 772 F.3d 284, 288 (1st Cir. 2014). As such, "there is no gross disparity between the length of the sentence being served and the sentence likely to be imposed today." *United States v. Mojica-Rivera*, Criminal No. 96-39-1 (MAJ/BJM), 2024 WL 1880348, 2024 U.S. Dist. LEXIS 81481, at *10-11 (D.P.R. Apr. 30, 2024).

---

[5]The policy statement provides in relevant part that:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6). The policy statement further provides as follows:

> Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

U.S.S.G. § 1B1.13(c).

13

Mr. Vazquez-Mendez erroneously claims that the jury was never asked to determined drug quantity. As previously stated, the jury returned a special verdict form finding beyond a reasonable doubt that the quantities of cocaine and heroin distributed and/or intended to be distributed as part of the conspiracy were, respectively, five (5) kilograms or more and one (1) kilogram or more. (Docket No. 501). The statutory minimum and maximum under 21 U.S.C. § 841, in this case, 10 years to life, are thus clearly supported by the jury's findings. Therefore, the rule set forth in *Alleyne* was not violated even if the argument was colorable in the compassionate release context. *See United States v. Ayala-Vazquez*, 96 F.4th 1, 11 n.5 (1st Cir. 2024).

Lastly, defendant's rehabilitation efforts while in prison such as employment and programing fall short of being extraordinary or compelling reasons. *See United States v. Chavez*, 534 F. Supp. 3d 176, 178 (D. Mass. 2021). In fact, the policy statement of the Sentencing Commission specifically prohibits considering rehabilitation, by itself, in the extraordinary and compelling reasons calculus. *See* U.S.S.G. § 1B1.13(d); *see also United States v. Malpica-Garcia*, Criminal No. 04-217 (ADC)(HRV), 2024 WL 1172769, 2024 U.S. Dist. LEXIS 51793 at *7 (D.P.R. Mar. 19, 2024).

In sum, assuming *arguendo* eligibility under the FSA and/or the existence of extraordinary and compelling reasons, for the reasons outlined above, I find that a reduction of Mr. Vazquez-Mendez' sentence would be inconsistent with the § 3553(a) factors and that he continues to be a danger to others in the community as provided by 18 U.S.C. § 3142(g).

## IV. CONCLUSION

In view of the above, I recommend that the defendant's motion for sentence reduction at Docket No. 1420 be DENIED.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within 14 days**. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED**

In San Juan, Puerto Rico this 16th day of August, 2024.

S/Héctor L. Ramos-Vega
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE
